UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

  -against-

ANTHONY CLASE,

                Defendant.

No. 17-CR-123 (LAP)

ORDER

---

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant Anthony Clase's motion for compassionate relief pursuant to 18 U.S.C. § 3582(c)(1)(A). (See dkt. no. 825.)  The Government has opposed the motion, (see dkt. no. 827), and Defendant did not file a reply.  For the reasons set out below, the motion is DENIED.

## I.  Background

    Defendant, who is 33 years old, is currently serving a 96-month sentence imposed on April 17, 2018, based on his participation in the armed and violent "075" narcotics conspiracy that operated on and around Weeks Avenue in the Bronx.  (See dkt. no. 497.)  As a member of the organization, he sold crack primarily for Edwin Romero, a leader, including at least two sales to an undercover officer.  (See Final Presentence Investigation Report ("PSR"), dated Nov. 21, 2017 [dkt. no. 290] ¶ 37.)

    In addition to associating with other 075 members who possessed, brandished, and discharged firearms and engaged in

other acts of violence, Defendant personally possessed at least one firearm during the conspiracy.  (Id. ¶¶ 16-17, 38.) Specifically, in February 2016, New York City Police Department officers observed the Defendant hide a loaded .22-caliber revolver in the wheel well of a car on Weeks Avenue. (Id. ¶ 39.) Subsequent testing confirmed that the Defendant's DNA was on the gun.  (Id.)

The Defendant pleaded guilty to conspiring to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).  (See dkt. no. 497 at 1.)  In imposing the sentence of 96 months, the Court noted the Defendant's history of recidivism and indicated the need for a serious sentence to encourage respect for the law and to protect society:

> [T]his defendant has been arrested some 40 times and
> sustained 15 convictions. . . .  This defendant simply
> does not respect the law and law enforcement.  There
> is always a need to deter others from similar criminal
> conduct but here, as the government has pointed out,
> there is a particular need to protect the public from
> further crimes of this defendant.  As has been
> discussed, his prior prosecutions and sentences have
> not had any effect on this defendant.

(Dkt. no. 532 at 16:5-17:7.)

Defendant bases his motion on the COVID-19 pandemic and notes that he "is currently suffering from a punctured lung, breathing issues with respiratory cavity [sic], and 'High Blood Pressure.'"  (Dkt. no. 825 at 1.)  As noted in the Government's

opposition and in Defendant's medical records, Defendant is not "currently" suffering from a collapsed lung but did so in 2015 as a result of a stabbing.  (See PSR ¶ 140.)  He was treated at a hospital the same day and discharged three days later.  (Id.) At his follow-up appointment a few days later, no complications were reported.  (Id.)  Although Defendant acknowledged using, and later abusing, pain medication prescribed during his hospital visit after the stabbing, (see id. ¶ 141), the PSR reports no subsequent breathing difficulties or respiratory distress.

It was only on or about May 29, 2020--after the BOP denied Defendant's request to the Warden for compassionate release-- that Defendant indicated that he had "been feeling short of breath."  (See Exhibit D to dkt. no. 287 ("Ex. D") at 10.) Defendant admitted that he had "not had any issues with his lungs until a few months ago."  (Id. at 11.)  At a follow-up appointment the next day, however, Defendant denied having shortness of breath and said that it "usually occur[s] with mild exertion."  (Id. at 6.)  The examination notes also reflect that Defendant's lungs "sound[ed] clear" and that his blood oxygen saturation was 100%.  (Id. at 5-6.)  The BOP's medical records show that Defendant's blood oxygen levels over the last year always exceeded 95%.  (See id. at 6, 10-11, 26, 33, 51, 57, 64.)

Defendant's medical records also show that he has high blood pressure and that he has ignored medical advice regarding his condition and refused to take medication.  (See, e.g., id. at 1 ("Inmate Clase is a 33 yo male with history of hypertension with poor adherence to therapy."); id. at 33 ("He admits non compliance of taking his BP pills."); id. at 42 ("He admits not taking his BP pills for over one month."); id. at 56 ("He was d/c from the htn ccc in 2018 due to non-compliance and refusal.").  In fact, on June 20, 2018, Defendant refused treatment for his high blood pressure, indicating that he understood that failure to treat his condition could lead to "an increase in blood pressure, stroke, heart attack or even death." (Exhibit B to dkt. no. 827.)

On May 6, 2020, Defendant requested compassionate release from the BOP, citing his "high blood pressure" and "short breath from lung collapse."  (Exhibit E to dkt. no. 827.)  The Warden denied the request on May 13, finding that Defendant's request was not within the guidelines for consideration for compassionate release under 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g).  (See Exhibit F to dkt. no. 827.)

## II.  **Applicable Law**

Defendant moves for a reduction of his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239

(2018).[1]  Under that provision, the Court may reduce Defendant's

sentence if it finds that (1) "extraordinary and compelling

reasons warrant such a reduction" and (2) "such a reduction is

consistent with applicable policy statements issued by the

Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The

relevant Guidelines policy statement counsels that a reduction

also is not proper unless "[t]he defendant is not a danger to

the safety of any other person or to the community."[2]

Under the First Step Act, the Court may exercise its

"discretion in determining what are extraordinary

circumstances."  United States v. Brooker, 976 F.3d 228, 234 (2d

Cir. 2020).  But a court's finding such circumstances merely

permits a defendant's release--it does not mandate it.  See,

e.g., United States v. Ebbers, 432 F. Supp. 3d 421, 430

(S.D.N.Y. 2020); United States v. Israel, No. 05-CR-1039 (CM),

2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019).  Ultimately,

"[t]he defendant has the burden to show he is entitled to a

---

[1] A defendant may bring such motion after he "has fully
exhausted all administrative rights to appeal a failure of the
Bureau of Prisons to bring a motion on [his] behalf or the lapse
of 30 days from the receipt of such a request by the warden of
the defendant's facility, whichever is earlier."  18 U.S.C.
§ 3582(c)(1)(A).  That requirement is plainly satisfied in this
case.  (See Exhibits E & F to dkt. no. 827.)

[2] U.S.S.G. § 1B1.13; see also United States v. Jordan, No.
1:19-CR-478-GHW, 2020 WL 4195353, at *2 (S.D.N.Y. July 16, 2020)
("The relevant policy statement is U.S.S.G. § 1B1.13.").

sentence reduction."  United States v. Lisi, 440 F. Supp. 3d
246, 249 (S.D.N.Y. 2020).

If the defendant establishes extraordinary or compelling
circumstances, the Court must still consider the § 3553(a)
sentencing factors "to the extent that they are applicable."  18
U.S.C. § 3582(c)(1)(A).  Those factors include, inter alia, "(1)
the nature and circumstances of the offense and the history and
characteristics of the defendant"; (2) "the need for the
sentence imposed . . . to reflect the seriousness of the
offense, to promote respect for the law, and to provide just
punishment for the offense"; and (3) "the need for the sentence
imposed . . . to protect the public from further crimes of the
defendant."  Id. § 3553(a)(1)-(2).

## III.  **Discussion**

Defendant has not carried his burden of establishing
"extraordinary and compelling" circumstances warranting release.
18 U.S.C. § 3582(c)(1)(A).  First, he is not currently suffering
from a punctured lung.  As noted above, that occurred in 2105,
and he was treated and recovered without incident.  (See PSR
¶ 140.)  The only complaint Defendant voiced was, as noted
above, after the Warden denied his motion for compassionate
release in May.  (See Ex. D at 10.)  Indeed, as noted by the
Government, the Defendant's medical records "do not reflect
chronic pulmonary distress, but in fact reveal the [D]efendant's

pulmonary evaluations are consistently positive with oxygen

saturation levels at the top of the applicable scales."  (Dkt.

no. 827 at 6.)  In short, "[t]here is no record evidence to

suggest that the [D]efendant's old injury puts him at greater

risk in light of COVID-19."  (Id.)

Second, Defendant's high blood pressure is also an

insufficient reason for release.  As noted above, Defendant has

refused the treatment for high blood pressure offered to him by

BOP.  (See, e.g., Ex. D at 1, 33, 42, 56.)  In any event,

although guidance is constantly evolving, it does not appear

that high blood pressure alone places an adult at increased risk

of severe COVID-19 illness.  See United States v. Sattar, 467 F.

Supp. 3d 152, 155 (S.D.N.Y. 2020); People with Certain Medical

Conditions, Centers for Disease Control and Prevention (last

updated Dec. 29, 2020).

Finally, even if Defendant had demonstrated "extraordinary

and compelling" circumstances warranting release, the § 3553(a)

factors weigh against release.  As the Court noted at

sentencing, Defendant has a lengthy and extensive criminal

history including some 40 arrests and 15 prior convictions.

(See dkt. no. 532 at 16:5-17:7.)  He clearly has not learned a

lesson from his prior convictions and incarcerations.  During

his involvement with 075, Defendant had constant contact with

firearms and accepted violence by others in connection with the

7

gang's activities.   (See PSR ¶¶ 16-17, 38-39.)   He himself was found in possession of a loaded firearm in the Bronx.   (See id. ¶ 39.)   The seriousness of Defendant's crimes, the need to punish him for those crimes, and the need to protect society from further crimes require continued incarceration.   See 18 U.S.C. § 3553(a)(1)-(2).

## IV.   Conclusion

For the foregoing reasons, Defendant's motion for compassionate release [dkt. no. 825] is DENIED. The Clerk of the Court shall mail a copy of this order to Defendant.

**SO ORDERED.**

Dated:      January 27, 2021
            New York, New York

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge